United States District Court
Southern District of Texas
**ENTERED**
February 16, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| ROBERT ERNEST MORENO, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-00213 |
| | § | |
| ARANSAS COUNTY SHERIFF'S | § | |
| OFFICE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Robert Ernest Moreno, a Texas prisoner appearing *pro se* and *in forma pauperis*, has filed this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997(e)(c); 28 U.S.C. § 1915A. For the reasons discussed below, the undersigned recommends that Plaintiff's complaint be DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted.

**A. Jurisdiction.**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

**B. Background.**

**1. The instant action.**

Plaintiff is currently a prisoner in the Texas Department of Criminal Justice-Correctional Institutions Division, housed at the Garza West Unit in Beeville, Texas. His lawsuit, however,

concerns alleged incidents that occurred while he was a pretrial detainee at the Aransas County

Detention Center in Rockport, Texas.[1]  Plaintiff filed this suit on August 30, 2023, naming

Aransas County Sheriff's Office, Sheriff Bill Mills, Chief Deputy Michael Brooks, and Deputy

Chief Armando Chapa as Defendants.  *See* Doc. No. 1.  In his complaint, Plaintiff broadly

alleges that, during his time as a pretrial detainee at Aransas County Detention Center,

Defendants violated his civil rights by denying him "proper medical attention" after he sustained

an injury at the jail.  *Id.*  To better understand Plaintiff's claims, the Court ordered Plaintiff to

answer a questionnaire, and Plaintiff subsequently provided his response.  (Doc. Nos. 11, 12.)

Plaintiff makes the following factual allegations in his complaint and in his response to

the Court's questionnaire, including in several attached exhibits.  The undersigned accepts all of

these factual allegations as true for the purposes of screening, and treats Plaintiff's questionnaire

response and his submitted exhibits as part of his complaint.

### 2. *Plaintiff's allegations.*

Plaintiff arrived at the Aransas County Detention Center in June 2022 as a pretrial

detainee.  (Doc. No. 12, p. 1.)  On or about July 22, 2022, Plaintiff allegedly slipped and fell in

the shower area of the detention center.  (Doc. No. 1, pp. 4-5.)  Plaintiff states that he injured his

back in the fall, and that the fall also aggravated a periumbilical hernia that Plaintiff had

developed prior to his confinement.  *Id.* (stating that "an opening and a ball of about 6.7 inches

---

[1]  In addition to Plaintiff's responses about the status of his criminal case, *see* Doc. No. 12, p. 1 ¶¶ 3-5, the undersigned takes judicial notice of the fact that Plaintiff was a pretrial detainee during the time of the events alleged in the complaint.  *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998) (allowing a court to take judicial notice of a "document filed in another court . . . to establish the fact of such litigation and related filings, [but not] . . . of the factual findings of another court"); *see also* Fed. R. Evid. 201(c)(1).  At the time of his filings, Plaintiff was purportedly awaiting trial for two offenses: (1) aggravated assault with a deadly weapon and (2) deadly conduct, which is defined as the intentional discharge of a firearm.  (Doc. No. 12, p. 1 ¶ 3.)  Plaintiff has since been convicted of both crimes and sentenced to a term of life imprisonment.  *See Inmate Information Details: Moreno, Robert Ernest, TDCJ Number: 02477237*, Tex. Dep't Crim. Just., https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action? sid=04127064 (last visited Feb. 16, 2024).

appeared on my abdomen [after the fall]"); *see also* Doc. No. 12, p. 2 ¶ 16.  Plaintiff alleges that

he requested medical treatment on July 24, 2022 – two days after his fall – and that Doctor

Randy Bingham ordered an ultrasound examination on August 26, 2022.  *Id.*  (Doc. No. 1, pp. 4-

5; Doc. No. 12, p. 2 ¶ 9.)  The September 7 ultrasound found "a small fat containing hernia . . .

within opening of 2.4 [centimeters]."  (Doc. No. 1-2, p. 2; Doc. No. 12, p. 7.)  The reviewing

physician also noted his "Impressions," concluding: "Small periumbilical hernia.  If there is

persistent clinical concern, recommend CT evaluation."  (Doc. No. 1-2, p. 2; Doc. No. 12, p. 7.)

     Plaintiff claims that he was denied "proper medical attention" and pain relief, stating that

he was "only" prescribed over-the-counter Tylenol, which he claims failed to effectively treat his

pain.  (Doc. No. 12, p. 1 ¶¶ 10-12.)  Plaintiff also claims that Doctor Bingham told him that he

"need[s] to get his hernia fixed," but that Deputy Chief Chapa denied Plaintiff's requests for

treatment.  *Id.* at 2 ¶¶ 19-21.  Plaintiff claimed to have filed two grievances, on October 17 and

18, 2022.  (Doc. No. 12, p. 2 ¶ 20.). He included one grievance, dated October 17, 2022, in his

pleadings, in which he stated:

> I'm filing this grievance because I've been denied proper medical attention for my
> hernia and back!  I've told the nurses that I've got pain, and all they give me is
> Ibuprofen and that is not helping!  Ever since I fell in the shower, my back has not
> stopped hurting and my hernia has been leaking—and all I've been told is that it
> won't be taken care of unless my guts come out! And that is not the proper medical
> attention.

(Doc. No. 12, p. 5 (cleaned up).)  Plaintiff's grievance bears an attached note from Deputy Chief

Chapa to the jail's medical unit, reading: "Please check into this.  Get back w/me so I can

prepare my response."  *Id.*  Deputy Chief Chapa then responded to the grievance, writing: "You

have been given proper medical care.  There is no danger of any immediate further medical

procedure based on examination and [doctor] recommendations."  *Id.*

Plaintiff contends that because of the alleged denial of medical attention, his hernia has "popped out more" and his pain has worsened, which in turn is causing him mental distress. (Doc. No. 12, p. 2 ¶ 14.)

### 3. *Plaintiff's legal claims and requested relief.*

Plaintiff claims that the defendants have "denied" Plaintiff "proper medical attention" during his pretrial confinement at the Aransas County Detention Center.  (Doc. No. 1, p. 3.) Liberally construed, Plaintiff's allegation is that the defendants have violated his constitutional right to adequate medical treatment; he specifically alleges that the defendants should be held liable because:

- the Aransas County Sheriff's Office was "involved by approving and disapproving" Plaintiff's medical care and has denied Plaintiff proper medical attention (Doc. No. 1, p. 3; Doc. No. 12, p. 2 ¶ 24);

- Sheriff Mills and Chief Deputy Brooks are a part of the jail's administration and also themselves denied him medical care (Doc. No. 1, p. 3; Doc. No. 12, p. 3 ¶¶ 25, 26);

- Deputy Chief Chapa denied his medical care and grievance for "no apparent reason whatsoever" (Doc. No. 1, p. 3; Doc. No. 12, p. 3 ¶ 27); and

- the individual defendants (Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa) "supervise other medical people" who denied him medical care (Doc. No. 12, p. 3 ¶ 28).

Plaintiff does not specify whether he seeks to hold the individual defendants liable in their official or individual capacities, so his claims will be evaluated under both theories of liability.

Plaintiff seeks injunctive relief in the form of "proper and professional medical attention" for treatment of his hernia.  Liberally construed, he also seeks monetary relief for "emotional

distress having to deal with all of this official oppression."  (Doc. No. 1, p. 4; Doc. No. 12, p. 3 ¶ 40.)

### C.  Standard of review.

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *see also* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).  A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).[2]  "The issue is not whether the plaintiff will ultimately prevail, but whether he is

---

[2]  Plaintiff has attached exhibits detailing his ultrasound findings and grievance regarding his medical care to his complaint.  The Federal Rules of Civil Procedure provide that an attachment to a complaint generally becomes "part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).  "Rule 10(c) therefore prohibits the Court's ignoring exhibits attached to a complaint."  *Merisier v. Johnson Cnty., Tex.*, No. 3:19-CV-2911-X-BN, 2021 WL 681443, at *11 (N.D. Tex. Jan. 14, 2021), *adopted*, 2021 WL 674123 (N.D. Tex. Feb. 22, 2021) (citing *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019)).  "When 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'"  *Rogers v. City of Yoakum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355

entitled to offer evidence to support his claim." *Id.*  Therefore, the Court "should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that the defendant is liable.  *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id.*

Pleadings filed by *pro se* litigants like Plaintiff are construed using a less stringent standard of review.  Documents filed by *pro se* litigants are to be liberally construed, and *pro se* complaints, however inartfully drafted they might be, are held to less stringent standards than formal pleadings drafted by lawyers.  *See Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A plaintiff's well-pleaded factual allegations in the complaint are to be taken as true for purposes of screening, but such deference does not extend to conclusory allegations, unwarranted factual inferences, or legal conclusions.  *DeMarco v. Davis*, 914 F.3d 383, 386-87 (5th Cir. 2019).

---

F.3d 370, 377 (5th Cir. 2004)); *see also Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940).  Thus, the undersigned considers Plaintiff's exhibits as part of his complaint and will analyze Plaintiff's allegations and address any discrepancies between the complaint and exhibits accordingly.

### D. Law.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he or she misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

Plaintiff was a pretrial detainee during the time of the alleged constitutional violations that gave rise to the instant § 1983 action, and his constitutional rights therefore "are found in the procedural and substantive due process guarantees of the Fourteenth Amendment." *Estate of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1966) (*en banc*)); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020). "The standard is the same as that for a prisoner under the Eighth Amendment." *Cadena*, 946 F.3d at 717 (citing *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019). A pretrial detainee may prove a constitutional violation in one of two ways: by demonstrating an unconstitutional condition of confinement or by demonstrating an unconstitutional episodic act or omission. *Hare*, 74 F.3d at 644-45. Because of Plaintiff's pretrial detainee status at the time of all of the alleged constitutional violations, any separate Eighth Amendment claims against any of the defendants should be dismissed.

Fourteenth Amendment claims in this setting can be generally differentiated as either "conditions of confinement" claims or "episodic acts or omissions" claims. A "conditions of

confinement" claim is a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement. *Flores v. Cnty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997). It is generally the conditions themselves that constitute the harm, "for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (*en banc*). Courts apply the test set forth in *Bell v. Wolfish* in conditions-of-confinement cases. *Wichita Cnty.*, 795 F.3d at 463. Under *Bell*, the question is "whether those conditions [about which the plaintiff complains] amount to punishment of the detainee." 441 U.S. 520, 535 (1979). "If an act is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. Sometimes challenged conditions are explicit, and sometimes they reflect an unstated (*de facto*) policy "established by evidence of a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials to prove an intended condition or practice.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (citing *Hare*, 74 F.3d at 645). But "isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Id.*

"More often, however, a plaintiff's claim, properly characterized, faults specific jail officials for their acts or omissions because the plaintiff cannot establish the existence of an officially sanctioned unlawful condition." *Brown v. Bolin*, 500 F. App'x 309, 313 (5th Cir. 2012). "In these cases, 'an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission.'" *Id.* (quoting *Scott*, 114 F.3d at 53). Thus, the plaintiff

complains first of a certain act or omission and then "derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission.'"  *Wichita Cnty.*, 795 F.3d at 463 (quoting *Scott*, 114 F.3d at 53).  Intentionality is not presumed for episodic acts or omissions claims, and a jail official violates the pretrial detainee's constitutional rights "when the official had 'subjective knowledge of a substantial risk of serious harm' to the detainee and responded to that risk with deliberate indifference."  *Id*. at 464 (quoting *Hare*, 74 F.3d at 650).  "In other words, the state official must know of and disregard an excessive risk to inmate health and safety."  *Id*.

In *Brown v. Bolin*, the Fifth Circuit determined that the district court correctly analyzed the plaintiff's complaint under the episodic acts or omissions standard because the claim began with a nurse's determination that the plaintiff's medical condition could be handled by the jail, despite Plaintiff alleging the nurse's conduct was a result of a policy and the record lacked evidence of a "systemic failure of medical care of the type that we have found to present a[n] unconstitutional condition of confinement."  *Brown*, 500 F. App'x at 313.

In *Estate of Henson v. Wichita County*, the Fifth Circuit determined that claims against a supervising physician who the plaintiffs claimed acted with deliberate indifference in failing to provide appropriate medical evaluation or transport for the detainee, who ultimately died in custody, were "properly characterized . . . as attacking episodic acts or omissions rather than conditions of [the detainee's] confinement."  *Wichita Cnty.*, 795 F.3d at 464-65.  The court further explained that, even if construed the plaintiffs' allegations as a challenge against a condition of confinement, the plaintiffs failed to show that the acts or omissions "were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice" that would "base a constitutional

claim on the defendant's implementation of an unstated rule or policy."  *Id.* at 465 (internal citations omitted).

Here, Plaintiff does not specify which theory of liability he intends to pursue (and indeed he is not required to make any such election).  Plaintiff's claims stem from the alleged denial of adequate medical care and treatment by prison officials, and Plaintiff's claims center on the defendants' actions in a narrow context—the alleged denial of "proper medical attention" for his hernia.  Liberally construed, the undersigned analyzes Plaintiff's allegations against Defendants as episodic acts or omissions.

### E. Discussion.

#### 1.  The Aransas County Sheriff's Office is not a proper party to this suit: it is neither a jural entity nor a person within the meaning of § 1983.

Plaintiff alleges that the Aransas County Sheriff's Office should be held liable for the purported denial of "proper medical attention" because it is involved in "approving and disapproving" Plaintiff's medical care.  *See* Doc. No. 1, p. 3; Doc. No. 12, p. 2.  This claim should be dismissed.

The capacity of an entity such as a sheriff's office to sue or be sued "shall be determined by the law of the state in which the court is located."  Fed. R. Civ. P. 17(b)(3).  In Texas, county sheriff's offices and police departments generally are not legal entities capable of being sued, "absent express action by the superior corporation (the county, in the case of the sheriff's department) 'to grant the servient agency with jural authority.'"  *Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (quoting *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991)).  Texas federal courts have made clear that both police departments and sheriff's offices are subdivisions of the city and county, and thus do "not have a

separate legal identity that would allow [either] to sue and be sued." *McAfee v. Houston Police Dep't*, No. 4:19-cv-112, 2019 WL 12021829, at *1 (S.D. Tex. Mar. 19, 2019) (Werlein, J.); *Crawford v. Collin Cnty. Det. Facility*, No. 4:20-CV-668-RAS-CAN, 2022 WL 4459855, at **2-3 (E.D. Tex. Aug. 18, 2022), *adopted*, 2022 WL 4449315 (E.D. Tex. Sept. 22, 2022) (county detention facility and sheriff's office do not have jural existence and cannot be proper parties to a lawsuit). Nor are sheriff's offices or police departments considered "persons" upon whom liability can be imposed under § 1983. *See Darby*, 939 F.2d at 314 (plaintiff could not sue city police department under the civil rights acts); *Hamilton v. Houston Police Dep't*, Civ. No. H-06-3769, 2008 WL 2626943, at **2-3 (S.D. Tex. July 1, 2008) (Rosenthal, J.) (dismissing claim against police department and sheriff's office because they lacked capacity to sue or be sued).

Accordingly, the undersigned recommends that Plaintiff's allegations against the Aransas County Sheriff's Office be dismissed with prejudice for failure to state a claim upon which relief may be granted because it lacks the requisite legal capacity to be properly named in this suit. The undersigned further recommends that the district court not substitute Aransas County for the Sheriff's Office because, as discussed next, such a substitution would be futile: Plaintiff fails to plausibly allege a constitutional violation under a theory of municipal liability. *Cf. Stanford v. U.S. Dep't of Justice-Bureau of Alcohol, Firearms, and Explosives*, Civ. No. V-14-0040, 2014 WL 4537992, at *2 (S.D. Tex. Sept. 11, 2014) (Atlas, J.) (dismissing claim because amendment to substitute United States as defendant would be futile).

### 2.  *Plaintiff fails to state a plausible claim for municipal liability under § 1983.*

Plaintiff does not specify whether he is suing Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa in their official or individual capacities.  In the interest of thoroughness and fairness to Plaintiff, the undersigned considers both possibilities.

A suit against public employees in their official capacities is essentially a suit against their employing entity.  In this case, a suit against Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa in their official capacities is a suit against Aransas County itself.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Construing Plaintiff's claim against the individual defendants in their official capacities as lodged against Aransas County, then Plaintiff alleges two claims against the county: that Aransas County should be held liable for denying Plaintiff "proper medical attention" for its involvement in "approving and disapproving" Plaintiff's medical care and for its supervision of "other medical people."  Doc. No. 1, p. 3; Doc. No. 12, p. 2 ¶ 24; *id.* at 3 ¶ 28.  Liberally construed, then, Plaintiff asserts that Aransas County has denied him adequate medical care and failed to supervise its medical employees.

Under § 1983, a municipality such as Aransas County may only be held liable for acts for which it is actually responsible.  *See Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).  The governmental body must either itself subject a person to a deprivation of rights or cause a person to be subjected to such deprivation.  *Connick v. Thompson*, 563 U.S. 51, 59 (2011).  A municipality is liable for the constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal policy or custom.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (a municipality may not be subject to liability merely for

12 / 28

employing a tortfeasor; liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation).  An official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 60.

Liability of a municipality under § 1983 therefore requires proof of three elements: a policymaker;[3] an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.  *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  "Where a policy is facially unconstitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious consequences that constitutional violations would result."  *Duke v. Dallas Cnty.*, No. 3:20-CV-117-G (BH), 2021 WL 3525106, at *2 (N.D. Tex. June 25, 2021), *adopted*, 2021 WL 3204565 (N.D. Tex. July 29, 2021) (citing *Piotrowski*, 237 F.3d at 579-80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849-50 (5th Cir. 2009)).  "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability."  *Piotrowski*, 237 F.3d at 579 (citation omitted) ("*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights).").

---

[3] Courts construe the identity of the final policymaker as "a question of law—specifically a question of state law—and not a question of fact."  *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 284 (5th Cir. 2016).  In Texas, "the county Sheriff is the county's final policymaker in the area of law enforcement, not by virtue of the delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected."  *Turner v. Upton Cnty., Tex.*, 915 F.2d 133, 136 (5th Cir. 1990) (citing *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)). Where the care of inmates is concerned, state law specifically provides that "[t]he sheriff of each county is the keeper of the county jail." Tex. Loc. Gov't Code § 351.041(a).  As such, a county sheriff is required to "safely keep all prisoners committed to the jail by a lawful authority, subject to an order of the proper court."  *Id*.  As noted in the main text, because the undersigned is analyzing Plaintiff's claims against the individual defendants in both their official and individual capacities, Plaintiff's claims against Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa in their official capacities are effectively a suit against Aransas County itself.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

"[I]solated unconstitutional actions by municipal employees will almost never trigger liability," because "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski*, 237 F.3d at 578. "Importantly, to adequately plead a policy or custom, the specific policy must be identified; it may not be inferred 'merely because harm resulted from some interaction with a governmental entity.'" *Kibbey v. Collin Cnty. Detention Facility*, No. 4:21-CV-799, 2023 WL 2598666, at *3 (E.D. Tex. Mar. 1, 2023), *adopted*, 2023 WL 2593152 (E.D. Tex. Mar. 20, 2023) (quoting *Guillotte v. Knowlin*, Civ. No. 21-1422, 2021 WL 7632004, at *2 (E.D. La. Dec. 7, 2021) (internal citation and quotation marks omitted)). "[B]oiler plate allegations of municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient." *Rodriguez v. Southern Health Partners, Inc*., No. 3:20-CV-0045-D, 2020 WL 2928486, at *5 (N.D. Tex. June 3, 2020) (citations omitted).

Liberally construed, Plaintiff's first claim seeks to hold Aransas County liable for the alleged denial of adequate medical treatment. But Plaintiff's claim that he was denied proper medical attention does not allege the existence of an Aransas County custom or policy that led to his alleged denial of proper medical attention or treatment, let alone one promulgated with deliberate indifference to known or obvious consequences that a constitutional violation would result. *See Duke*, 2021 WL 3525106, at *3. Moreover, Plaintiff's claim focuses on a single medical episode. He does not claim that his denial of "proper medical attention" is a result of a widespread practice of denying medical care that was so common and well-settled as to constitute a custom that fairly represented municipal policy.

Plaintiff's second liberally construed claim, alleging that Aransas County failed to supervise its medical staff, equally lacks merit here. In a § 1983 claim for failure to train or

supervise, the plaintiff must show that (1) the entity or supervisor failed to train or supervise the subordinate official, (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference.  *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  Thus, to succeed on a claim of failure to train or supervise, the plaintiff usually must demonstrate "a *pattern of violations*."  *Id.* at 382 (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (internal quotations omitted) (emphasis in original).  "Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability."  *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *McCully*, 406 F.3d at 382).

Here, Plaintiff fails to plead any facts supporting any allegations against the individual defendants in their official capacities—effectively, Aransas County—were deliberately indifferent in creating or enforcing policies regarding the supervision of its medical staff.  In his pleadings, Plaintiff does not articulate any facts concerning how the Aransas County Detention Center's medical staff were supervised, why or how their supervision was deficient because of some failure by Aransas County (as opposed to the individual defendants), or how any failure to supervise amounts to deliberate indifference on the county's part.  Plaintiff merely states that the individual defendants supervised "other medical people" who denied him medical care.  (Doc. No. 12, p. 3.)  This is a conclusory statement with no supporting facts, and it does not give rise to a viable claim.

Thus, in either case, Plaintiff has not identified a constitutional violation whose moving force is a policy or custom.  Plaintiff's liberally construed claims against Aransas County should be dismissed.

### 3.  Plaintiff's claims against Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa in their official and individual capacities should be dismissed.

As stated above, the undersigned liberally analyzes Plaintiff's claims against Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa in their official and individual capacities. For the reasons discussed below, the undersigned recommends that the district court dismiss Plaintiff's claims against Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa.

#### a.  Official capacity claims.

Under § 1983, a suit against individuals in their official capacities "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Goodman*, 571 F.3d at 395 (internal quotations and citation omitted).  Plaintiff's claims against Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa in their official capacities are effectively a suit against Aransas County.  *See Will*, 491 U.S. at 71.  As discussed above, the undersigned concludes that Plaintiff fails to plausibly allege any viable claim against Aransas County.  Therefore, the undersigned recommends that the district court also dismiss Plaintiff's claims against Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa in their official capacities with prejudice as frivolous and for failure to state a claim upon which relief can be granted.

#### b.  Individual capacity claims.

In suits against government officials in their individual capacities, the plaintiff must allege "specific conduct giving rise to a constitutional violation."  *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).  Specifically, the plaintiff must demonstrate that the defendant was either personally involved in the acts causing the deprivation of the plaintiff's constitutional rights, or that a causal connection existed between an act of the supervisory official, like the

implementation of a policy, and the constitutional violation the plaintiff seeks to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1986) (applying the standard to defendant sheriff); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) (applying the standard to supervisory officials generally).

As stated above, Plaintiff generally claims that Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa have "denied and are still currently denying Plaintiff proper medical attention." (Doc. No. 1, p. 3 (cleaned up).) Plaintiff also claims that Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa are liable because of their roles as supervisors over "other medical people" and that they each denied Plaintiff medical care. (Doc. No. 12, p. 3 ¶ 28.) Discussing each individual capacity claim in turn below, the undersigned concludes that Plaintiff's claims against Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa should be dismissed.

### i. Denial of "proper medical attention."

Plaintiff seeks to hold Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa liable for denying Plaintiff "proper medical attention" for his hernia during his confinement at the Aransas County Detention Center. (Doc. No. 1, p. 3.) In other words, Plaintiff appears to allege that Defendants failed to provide adequate medical treatment for Plaintiff's hernia injury, in violation of Plaintiff's constitutional rights.

As stated above, Plaintiff's allegations against these defendants are construed as raising an episodic acts or omissions due process claim. When "a pretrial detainee's claim is based on a jail official's episodic acts or omissions, the proper inquiry is whether the official had a culpable state of mind in acting or failing to act." *Cope v. Cogdill*, 3 F.4th 198, 206 (5th Cir. 2021). An official "violates a pretrial detainee's constitutional right to be secure in his basic human needs

only when the official had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference." *Id*. at 206-07 (quoting *Estate of Henson*, 795 F.3d at 464).

The Fifth Circuit has repeatedly described "deliberate indifference as 'an extremely high standard to meet.'" *Ford v. Anderson*, 90 F.4th 736, 752 (5th Cir. 2024) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001)). To establish deliberate indifference regarding denial-of-medical care claims:

> The [pretrial detainee] must first prove objective exposure to a substantial risk of serious harm—in other words, the [pretrial detainee] must prove a serious medical need. Second, the [pretrial detainee] must prove the officials' subjective knowledge of this substantial risk. Third, the [pretrial detainee] must prove that the officials, despite their actual knowledge of the substantial risk, denied or delayed the [pretrial detainee's] medical treatment. Finally, the [pretrial detainee] must prove that the delay in or denial of medical treatment resulted in substantial harm, such as suffering additional pain. Importantly, disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference.

*Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019) (cleaned up); *see also Estate of Bonilla v. Orange Cnty., Tex.*, 982 F.3d 298, 305 (5th Cir. 2020) ("To prove deliberate indifference, the Plaintiffs must show that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that the defendants actually drew the inference, and that the defendants disregarded that risk by failing to take reasonable measures to abate it." (cleaned up)). A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

In the context of medical treatment, the detainee can demonstrate a jail official's deliberate indifference by showing that the official "refused to treat him, ignored his complaints,

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotation marks and citation omitted).  "Deliberate indifference can also be shown where a jail official knows that a detainee faces 'a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Ford*, 90 F.4th at 752 (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)); *Thompson v. Tex. Dep't Crim. Just.*, 67 F.4th 275, 281 (5th Cir. 2023) (finding in the Eighth Amendment context that subjective knowledge can, under exceptional circumstances, be inferred from the obviousness of the substantial risk).  However, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."  *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (internal quotations and citation omitted).

First, Plaintiff must plausibly allege "a serious medical need."  Here, Plaintiff alleges the denial of medical treatment for his hernia injury, which was allegedly aggravated by his slip and fall in the shower area of the Aransas County Detention Center.  As stated above, a serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Gobert*, 463 F.3d at 345 n.12.  "A hernia does not automatically present a serious medical need for purposes of constitutional analysis."  *Warren v. Gusman*, No. CV 16-15046, 2017 WL 1373875, at *12 (E.D. La. Mar. 10, 2017), *adopted*, 2017 WL 1355709 (E.D. La. Apr. 13, 2017) (collecting cases).  However, a hernia can be an objectively serious medical condition in certain cases.  *Torres v. Wexford Health Sources, Inc.*, No. 12C8389, 2016 WL 5373060, at *6 (N.D. Ill. Sept. 26, 2016) (finding a serious medical need existed where plaintiff's hernia "was permanently irreducible, was increasing in size, and was extremely painful, and that he was referred [for] surgical

evaluation").  Chronic pain, in and of itself, may also be considered as a separate, objectively serious condition.  *See, e.g.*, *Harris v. Hegmann*, 198 F.3d 153, 160 (5th Cir. 1999) (plaintiff's complaints of "excruciating pain" from his broken jaw provided a serious medical need); *Tamez v. Torok*, No. 2:21-CV-00220, 2021 WL 526354, at *4 (S.D. Tex. Oct. 12, 2021) (Hampton, M.J.) (finding a serious medical need for plaintiff's "severe and continuous pain" arising from gunshot wounds and "chronic back issue"), *adopted*, 2021 WL 5233310 (S.D. Tex. Nov. 10, 2021) (Morales, J.); *Torres*, 2016 WL 5373060, at *6.

Plaintiff already had a hernia upon his arrival at the Aransas County Detention Center in June 2022, but the injury was purportedly exacerbated by his slip and fall in the shower area of the jail on or around July 22.  (Doc. No. 1, p. 3.)  Plaintiff acknowledges that he was seen several times for his injury because he was experiencing pain, and that he received an ultrasound examination.  *See* Doc. No. 12, p. 2 ¶15.  Plaintiff alleges that a 6.7-inch "ball" appeared on his abdomen, but the ultrasound found only "a small fat containing hernia . . . within opening of 2.4 [centimeters]."  (Doc. No. 1-2, p. 2; Doc. No. 12, p. 7.)  Doctor Bingham described this hernia as a "[s]mall periumbilical hernia," concluding a recommendation for a CT evaluation "[i]f there is persistent clinical concern."  (Doc. No. 1-2, p. 2; Doc. No. 12, p. 7.)  "When an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls."  *Rogers*, 660 F. App'x at 285 n.6 (internal citation and quotation marks omitted).

Plaintiff was provided Tylenol for his pain, but nevertheless filed grievances in October seeking (unspecified) further medical treatment because of his worsening pain, which Deputy Chief Chapa allegedly denied.  (Doc. No. 12, p. 2, ¶ 20.)  In his October 17 grievance, Plaintiff complained not only about the pain of his injury but also that his hernia had been "leaking."

(Doc. No. 12, p. 5.)  Nowhere in Plaintiff's complaint or response to the Court's questionnaire does Plaintiff allege that he suffered from any symptoms other than pain and a growing hernia. However, accepting the factual allegations in Plaintiff's pleadings (including his attached grievance) as true, the undersigned considers Plaintiff's hernia as a serious medical need, not only because of his allegedly worsening pain nearly one month after his ultrasound examination but also because his hernia apparently began "leaking" and because Doctor Bingham allegedly told him that the hernia needed to be "fixed."  (Doc. No. 12, p. 2 ¶ 21.)

Even considering Plaintiff's hernia injury as a serious medical need, Plaintiff must still plausibly allege the individual defendants' subjective knowledge of the existence of the injury and the substantial risk it presented to his health.  Nowhere in Plaintiff's pleadings does Plaintiff allege that Sheriff Mills subjectively knew about Plaintiff's injury at all: he states only that Sheriff Mills is a part of the jail's administration.  *See* Doc. No. 12, p. 3 ¶ 25.  Plaintiff contends that Chief Deputy Brooks learned about Plaintiff's hernia upon Plaintiff's arrest and booking at the Aransas County Detention Center, *see id.* at 2 ¶ 17, but does not claim that Chief Deputy Brooks was aware of subsequent Plaintiff's slip-and-fall injury or how that injury allegedly exacerbated the hernia, thus triggering the need for the medical care that Plaintiff claims was denied.

Deputy Chief Chapa appears to be the only individual whom Plaintiff alleges had subjective knowledge about Plaintiff's aggravated injury, because Chief Deputy Chapa purportedly received and responded to Plaintiff's grievances seeking additional medical attention.  *See* Doc. No. 12, p. 3 ¶ 27; Doc. No. 1, p. 3.  But Plaintiff's submitted documents reflect that Deputy Chief Chapa consulted with the jail's medical staff for advice upon receiving Plaintiff's grievance seeking medical care.  *See* Doc. No. 12, p. 5 (Deputy Chief Chapa note to

medical department: "Please check into this.  Get back w/me so I can prepare my response."). Deputy Chief Chapa then responded to Plaintiff's grievance, stating that Plaintiff had been provided the proper medical care and that no additional care was required "based on examination and [doctor] recommendation."  *Id.*

Plaintiff therefore fails to plausibly allege the second prong of the deliberate indifference inquiry: that Deputy Chief Chapa had actual subjective knowledge of the substantial risk to Plaintiff's health.  Plaintiff simply asserts that this is the case, because Plaintiff specifically stated in his grievance that his hernia was leaking and requested further medical attention and that Deputy Chief Chapa denied Plaintiff's grievance for "no apparent reason whatsoever." (Doc. No. 1, p. 3; Doc. No. 12, p. 3.)  But Plaintiff's submitted exhibit reflects that Deputy Chief Chapa did not subjectively believe there was a substantial risk to Plaintiff's health, because he consulted with the medical department about it before denying Plaintiff's grievance.  Plaintiff's submitted exhibit contradicts his allegation of deliberate indifference, and his exhibit controls. *See Rogers*, 660 F. App'x at 285 n.6.

Additionally, Deputy Chief Chapa's potential culpability falls on the final prong of the deliberate indifference analysis—that the alleged denial of medical treatment resulted in substantial harm.  As noted above, "disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference."  *Petzold*, 946 F.3d at 249.  It is clear that Plaintiff believes he did not receive "proper medical attention" because he disagrees with the evaluation and treatment he received for his hernia injury while confined at the Aransas County Detention Center.  But Plaintiff does not meet the stringent deliberate indifference standard that Deputy Chief Chapa "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton

22 / 28

disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotation marks and citation omitted).  Plaintiff's pleadings show that he was evaluated by the medical staff at the Aransas County Detention Center after his slip-and-fall injury and that Deputy Chief Chapa was responsive to his grievances after consulting with the medical unit.  There is no indication that Deputy Chief Chapa intentionally treated Plaintiff incorrectly: he stated that he was acting upon the advice and recommendations of the jail's doctor.  *See* Doc. No. 12, p. 5.  "[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment." *Gobert*, 463 F.3d at 346.  Deputy Chief Chapa's decision to follow the advice of the medical providers caring for Plaintiff's injury does not rise to the level of deliberate indifference to plausibly allege a constitutional violation for denial of "proper medical attention."

In sum, Plaintiff's individual-capacity claim against Sheriff Mills fails because Plaintiff fails to plausibly allege that he had knowledge of Plaintiff's medical condition or that he personally denied medical care to Plaintiff.  His claim against Chief Deputy Brooks fails because Plaintiff does not plausibly allege that he had knowledge of Plaintiff's alleged aggravation of the hernia by his slip and fall in the shower, that there was any substantial risk to Plaintiff's health, or that he personally denied medical care to Plaintiff.  And Plaintiff's individual-capacity claim against Deputy Chief Chapa fails to plausibly assert that he was subjectively aware of a substantial risk to Plaintiff's health or that he acted with deliberate indifference to Plaintiff's medical needs.  Plaintiff's claims against all three individual-capacity defendants should accordingly be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

### ii. *Supervisory role claims.*

Plaintiff attempts to hold Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa liable because of their supervisory roles over medical staff who allegedly denied Plaintiff the medical care he sought.  (Doc. No. 12, p. 3.)  However, Plaintiff is unable to pursue such claims under § 1983.  *See City of North Richland Hills*, 406 F.3d at 381 (holding supervisory officials cannot be held liable for the unconstitutional actions of their subordinates on any theory of vicarious or *respondeat superior* liability); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (the acts of a subordinate "trigger no individual § 1983 liability").

To the extent that Plaintiff seeks to hold the individual defendants liable for their failure to properly train or supervise the medical personnel, that claim, too, would lack merit here.  "In a § 1983 claim for failure to supervise or train, the plaintiff must show: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'"  *Goodman*, 571 F.3d at 395 (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)).  Here, and as described above, Plaintiff does not plead any facts asserting that Sheriff Mills, Chief Deputy Brooks, or Deputy Chief Chapa failed to properly supervise the Aransas County Detention Center medical staff, nor has he pleaded why or how their supervision was deficient, or how any failure to supervise amounted to deliberate indifference.  Plaintiff merely states that the individual-capacity defendants supervised "other medical people" who denied him medical care.  (Doc. No. 12, p. 3.)  Such a conclusory statement with no supporting facts does not give rise to a plausible claim.  The undersigned therefore recommends that Plaintiff's supervisory claims against Sheriff Mills, Chief Deputy Brooks, and Deputy Chief Chapa in their individual capacities be dismissed.

### 4.  Plaintiff's request for injunctive relief should be denied as moot because Plaintiff is no longer housed at the Aransas County Detention Center.

Plaintiff seeks both injunctive and monetary relief in this case for the alleged constitutional violations that took place during his pretrial confinement at the Aransas County Detention Center.  Having since been convicted, Plaintiff is now housed at TDCJ-CID's Garza West Unit.

When a prisoner sues for equitable relief under § 1983 and is no longer under the control or custody of the defendants, his claims for declaratory and injunctive relief are rendered moot. *Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (citing *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988)).  That rule is premised upon the idea that equitable relief should only be granted if the plaintiff can present a "sufficient immediacy and reality" that he is at risk of suffering a direct future injury as a result of the challenged official conduct.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983).

As noted above, Plaintiff requests that the Court issue a declaratory judgment stating that the actions of the defendants at the Aransas County Detention Center violated the United States Constitution.  The undersigned liberally construes Plaintiff's prayer for injunctive relief to be for "a preliminary and permanent injunction" requiring Defendants and Aransas County Detention Center staff to provide him with proper medical care for his hernia injury.  However, Plaintiff is no longer in the custody of the Aransas County Detention Center.  He has been sentenced and placed under the authority of TDCJ-CID.  None of the actions of which Plaintiff complains occurred at any of the TDCJ-CID facilities at which Plaintiff was or is currently housed.  In fact, the source of Plaintiff's grievances is the medical care (or alleged lack thereof) at the Aransas County Detention Center itself.  Plaintiff has not suggested that he will again be subjected,

imminently or otherwise, to the Aransas County Detention Center's medical care. Thus, even if the district court concludes that Plaintiff has plausibly alleged a claim against the defendants, the district court should nonetheless dismiss Plaintiff's claims for injunctive relief as moot because of his transfer from the Aransas County Detention Center.

### F. Leave to amend should be denied.

The undersigned is recommending dismissal of Plaintiff's claims. "When the dismissal of a *pro se* complaint is appropriate, it should generally be done without prejudice in order to allow the plaintiff an opportunity to file an amended complaint." *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). But leave to amend need not be granted if amendment would be futile – for example, if an amended complaint would still fail to state a claim upon which relief may be granted. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of amendment is adequate justification to refuse to grant leave to amend).

"If the prisoner has filed his complaint and submitted questionnaire responses, then the court may conclude that he has pleaded his best case such that granting him further leave to amend would be futile or cause unnecessary delay." *Clark v. Waddell*, No. 7:22-cv-00059-M-BP, 2023 WL 8605313, at *18 (N.D. Tex. Nov. 15, 2023) (citing *Witherspoon v. Waybourn*, No. 4:20-cv-1150-P, 2021 WL 2635917, at *10 (N.D. Tex. June 25, 2021) and *McLean v. King*, No. 3:20-cv-1244-C-BK, 2020 WL 6049297, at *2 (N.D. Tex. Sept. 15, 2020)); *see also Mejia v. Monroe*, No. H-18-3036, 2021 WL 765726, at *2 (S.D. Tex. Feb. 26, 2021) (Miller, J.) (finding that inmate had pleaded his best case where he was afforded an opportunity to plead facts supporting his claim through a more definite statement). Here, Plaintiff has had the opportunity to plead his best case against Defendants: he has submitted his complaint and supporting

exhibits, and has responded to the Court's questionnaire.  The undersigned concludes that Plaintiff has already pleaded his best case, and that leave to amend should therefore be denied.

### G. Conclusion and recommendation.

The undersigned recommends the following:

- The district court should DISMISS Plaintiff's lawsuit with prejudice as frivolous and for failure to state a claim upon which relief may be granted;

- The district court should NOT grant Plaintiff leave to amend his complaint.

- The district court should impose a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g), and should instruct the Clerk of Court to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

### H. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas. A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-

to proposed factual findings and legal conclusions accepted by the district court.  *See Douglass v.*

*United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

      SIGNED on February 16, 2024.

MITCHEL NEUROCK
United States Magistrate Judge